All right. Can you call the next one? Case number 15-2479. In the Interest of Joshua, Ariel, and Alexa L. Good morning. Good morning, Your Honor. Good morning, Your Honor. Okay. And would you identify yourselves for the record, please? Elizabeth Butler, on behalf of the appellant. Okay. My name is Michelle Levin. I'm an Assistant State's Attorney on behalf of the people of the State of Illinois. Okay. Christopher Williams, Assistant Public Guardian for the Minors. Okay. And have the appellees had an opportunity to speak in terms of? We have. The Public Guardian is going to be taking the lead in this argument, and I would like to just reserve a couple minutes for. Okay. So we'll give the parties 15 minutes apiece, and then we'll take the bulk of the 15 and give Counselors a couple minutes. All right. And then rebuttal? I'm asking for three minutes for rebuttal. Three minutes? Okay. Fine. All right. You may proceed. May it please the Court, my name is Elizabeth Butler, and I am here on behalf of the appellant Mario, the father of the non-party minor, Claudia, as well as the father of Alexis, Joshua, and Mario. There are two issues that I wish to address to the Court, the first one being the application of NVDM and SM to the instant case, as well as the insufficient corroborating evidence that the trial court or that existed to find that Alexa was sexually abused and Mario and Joshua were abused, neglected for injurious environment and substantial risk of physical injury. Okay. Before you start, how would you define for us the term independent evidence? It is in the AP, it is defined as that evidence which you can rely upon in order, and it shows that it is almost more likely than not that the allegations that made by the child actually occurred. Isn't that the same for corroboration as well? The corroboration actually appears to be a little bit, what we see in the case law is more information. When we talked to NVCC, the corroboration, these were allegations of boys alleging sexual abuse. The corroboration was first that the boys were forced to participate in a sexual game with the father. Their corroboration amounted to them seeing and participating with one another into the games. And also corroboration in that case was testimony that both boys had significant behavioral problems, and those problems were indicative of sexual abuse. Similarly, in the Walter B, the corroboration was the mother observing the child with the father in inappropriate circumstances, and again the child exhibiting inappropriate or behavioral emotional problems, that was found to be indicative of sexual abuse. So if the medical records exception to the hearsay in the Juvenile Court Act only applies to the minor, that is the subject of the proceeding, then why are you relying on Claudia's Hargrove records? Well, Your Honor, those went to establish that she had motive to testify, to make a false allegation. They were also brought out to establish that she had a history of mental illness. It also went to show that she, while at Hargrove, would provoke, would say things to provoke the other children at Hargrove, and also that she was prone to starting rumors. And that is certainly relevant to determine whether or not Claudia's statements or allegation is reliable. So are they cooperative or independent evidence here? Well, I think they would be independent evidence. Your Honor, I have to say I don't see the distinction between the corroboration and the independent evidence that you appear to be making. I think what Hargrove records went to show was the reliability as to So here's my point. The cases tell us that statements have to be reliable, right? Yes. And that they have to be corroborated, right? Yes. And that corroboration pursuant to the statute has to be, and the case law, has to be independent evidence. So you're making an argument here with regards to the Stroger records, right, that they should be kept out, right? But then at the same time you're arguing that the Hargrove records should be admissible. So that's why I want to see what your interpretation is here in terms of independent evidence and why is it the restriction applicable only to the Stroger records and not the Hargrove records? Well, Your Honor, I would say even if you were to bring in and consider the Stroger records, they go to show and undermine the credibility of Claudia, and in a very particular and very important way. Investigator Cole testified to coming to the house, or coming to what appears to be the foster parent's house, and talking to Claudia, and Claudia, and the court really honed in on this and said, well, when did this allegation, when did this abuse allegedly occur? And Investigator Cole said it wasn't recent, it was in the distant past. The Stroger records indicate that Claudia revealed that the abuse occurred essentially the day before Investigator Cole talked to her, and so those Stroger records, if admissible, really go to undermine the credibility one more piece of information that goes to underscore or undermine the credibility of Claudia. But aren't the comments in the records after the abuse? Excuse me? Aren't the comments in the Stroger and the St. Elizabeth hospital records after the abuse? So wouldn't they be more reliable under your definition? Well, I think there is the problem, or what the Stroger records indicate, is that Claudia is referring to the abuse supposedly happening the day before Inspector Cole investigated. Inspector Cole testified that when she talked to Claudia, she said it happened in the distant past. What that evidence and what that discrepancy goes to show is the credibility. There is another thing that in terms of the credibility of... Let me stop you for a moment. Sure. A court of review doesn't make credibility determinations. Correct. This is a manifest weight of the evidence case. The way I look at manifest weight is if there is some evidence to support, then we have to consider that it cannot be a manifest... It can't be contrary to the manifest weight of the evidence. And you're talking about credibility determinations, evidence that you call independent. Do you have a case that calls evidence independent? Your Honor, I was referring to INRI AP that says corroborating evidence is independent evidence. Okay. But you see, we're only looking at, or at least we're supposed to only look at, whether there is any evidence to support this, not to make credibility determinations, not to stack up evidence and say that if we were deciding the case, our decision would be different. Many times I think my decision would be different than what the trial court does, but I still affirm because if there's any evidence to support the trial court, that's our duty to do so. And the issue in this case, Your Honor, is that the trial court found the corroborating evidence of Alexa being a Claudia statement. And there is no... Claudia statements come in. There is no corroborating evidence. And Claudia statements amount to bare-bone allegations. Claudia statements come in. They're hearsay statements. They are then used to corroborate Alexa's. Alexa's are used to corroborate Claudia's. So your argument is that that's not evidence at all? Correct. It's not sufficient. It's not... Well, it doesn't pass the scrutiny that a trial court should do to determine the admissibility. And that's... The trial court had said, I'm going to... At one point the trial court had said, the half-sister's statements as to what Claudia told her are inadmissible hearsay. And then the trial court then said, no, I'm going to admit them because it is a sibling. The sibling statements come in. So if hearsay statements are not corroboration, then how do you reconcile that with Justice House's recent decision in NRA DM where basically that's what Justice House says is that hearsay can't come in to corroborate? What the trial court did in DM was act as a... act and carry out its fundamental obligation, or one of the fundamental obligations is to be a gatekeeper for the evidence. And what the trial court did in DM was say, I will allow this non-party minor statement in as long as it's corroborated. And the appellate court said, yes, that's the right thing to do. So the trial court acted as a gatekeeper. And it really, based on the language, and this is paragraph 5 of NRA DM, the court also stated that as long as K.S.'s statements were corroborated, they would be admitted. So there was a testing of the evidence before it was admitted. Also NRA DM is so distinct from this case. In NRA DM, the guardian and the state said, we want to include this VSI. Initially the trial court said no. The state then added additional pleadings. The corroborating evidence was the father's taped confession to sexually abusing the non-party minor. In the instant case, you know, the guardian, the father sought to produce, have Claudia produced. The guardian said, no, her evidence, her testimony would be minuscule at best. The state said, we're not seeking to have her statements admitted. We're not trying to make a finding of sexual abuse. Again, when Kincaid-Turner, and the trial court said, I will revisit this issue if Claudia's statements appear to be crucial. When the father did a motion in limine and then also again objected to whatever statements Claudia may have said, the victim-sensitive interview, when investigative Kincaid-Turner was going to testify. So taken outside Claudia's statements, is your argument that there is no cooperation as to Alexis' abuse? Correct. Because if we look at NVCC, there is, well, a couple of things. The statement itself, NVCC, in the Walter B, the appellate court says, and understands that in cases like this, there aren't necessarily physical evidence. And so we can't look at that and say that has to, you know, so we look at other places. Let me stop for a second then. If there is nothing cooperative about Claudia's statements, then why did the father here want to have her come in to testify? Because that was lingering. Because she was alleged, it was alleged in the original petition for the three minors that Claudia had made allegations of sexual abuse. So you have this allegation out there and you have Claudia took a VSI, victim-sensitive interview, but that was never produced. Not that it didn't exist, but the state said we're not making an allegation of sexual abuse, so therefore we don't have it. Yet, at closing argument, they do argue that Claudia was not only, she was consistent in making her allegations. There should be a finding that she was sexually abused. And her allegations corroborate those of Alexa. There also, in the cases that we have, Enri CC, Enri Walter B, there is so much more information. The allegations themselves, the appellate court has said, the allegations themselves can be sufficient corroborating evidence if it shows that the child has a level of knowledge of the anatomy or sexual activity that is inappropriate for a child of that age. And in the cases of Enri CC, Enri Walter B, there was a lot of evidence, excuse me, evidence as to the allegations and that they contained very graphic information that a child of that age would not know. You don't have that here. You also don't have here any investigation by Investigator Cole or Kincaid Turner or anyone else, you know, as to any of the statements made by any of them, Claudia or Alexa. Well, you argued that, one other thing about Claudia's statements is that you argued that the fact that she's, there was no adjudication as to the abuse as to her, that that was unfair for the father to defend himself again. What safeguards would there have been or how would this have enhanced the father's case if there would have been an adjudication? You know, a lot of these problems could have been and would have been resolved if the state had filed a petition or the guardian had filed a petition for adjudication of wardship for Claudia. Now they didn't have to. What they chose to do was to find a violation of the order of protection. But the violation, the evidence that is admissible and sufficient to find a violation of the order of protection is the same amount of evidence or the standard as a dispositional hearing and that amounts to any evidence that would, that could be relied upon. And the provision, I think it's 2-22 regarding the evidentiary standard of a dispositional hearing says, you know, it is not up to the standard of an adjudication hearing. So the best thing to have done is for the guardian or the state to have filed a petition and so the test, the sufficiency of Claudia's allegation would have been tested in an adjudicatory hearing where the rules of evidence that are required for civil proceedings would have applied. Thank you. Thank you. Thank you. Thank you, your honors. Again, Christopher Williams for the minors. So why wasn't there a new case filed for Claudia? That particular question would be best directed towards the state. The state will address that, your honor. I would say there wasn't one and it wasn't necessary. The bottom line is that the court never made a finding of sexual abuse for Claudia. That just never happened because there was no petition. Claudia's statements were solely used for corroboration. And the court was asked about corroboration, what is the nature of it. We have a great deal of guidance from the appellate court and the Illinois Supreme Court about what it is. The definition is extremely broad. It can be just about anything, really. It can be circumstantial evidence. It can be a medical report. It can certainly be behavior by the child that seems to show sexual knowledge beyond their years. What about independent evidence? Well, I haven't thought about the idea of independent evidence because the question here is, is there corroboration of Alexa's statement? And under the law, we know that if Alexa does not testify, and she didn't, we need corroboration. That's what the statute says specifically. So I was focused on what is corroboration. And it's a very broad definition. And the Illinois courts have turned to Black's Law Dictionary, really. It's any evidence that makes it more probable that abuse occurred. So certainly, corroboration can definitely be hearsay evidence. There's not one case or one part of the statute that says corroboration cannot be hearsay. Well, the reason I ask is because here, unlike some cases that have laid out, hearsay can be used as corroboration. You might have a number of witnesses who give hearsay statements and so on and so forth. But here, we have a situation where actually the child that was abused and then the one who said that there was abuse had a discussion. So can we consider that as independent evidence? As the courts tell us that we have to look at, if there's no cross-examination and we look at corroboration, you have to look at independent evidence. So is this independent evidence? About the discussions between? Right, because they had a discussion. So we don't know what that discussion was or how that conversation went. There's some indication or inference that Claudia has an overbearingness for the other children. Right. That could be termed independent evidence that could go to the reliability of the statements. Yeah. On that point, Your Honor, the evidence is not exactly clear as to who told whom. Between Alexa and Claudia, who told whom first? Claudia claimed that she told Alexa first and these other parts of the record. But, you know, I ask the court, if the court is interested in that question, to look at the reasonableness that a 7-year-old and a 13-year-old somehow conspired together to come up with a false allegation of sexual abuse. I think that's highly unreasonable and extremely speculative. There is absolutely no evidence in the record for that. And if you think about how a 7-year-old is going to be influenced by an older sister to make up a sex abuse allegation, a 7-year-old, I find that highly hard to believe and unreasonable. Even in addition to that, there's no evidence of that in the record. But certainly it can be considered, you can term it independent evidence. But we know that there's corroboration in this case all over the place. Okay, number one, the siblings Claudia's statements corroborate Alexa's statements. We know that this is corroboration under Alexis H. and Ann W. Two districts, Alexis H. this court, Ann W. the third district. That's number one. We have a diagnosis of sex abuse for Alexa from Dr. Lorand at Schrodinger Hospital. We also have a diagnosis of sex abuse for Claudia, by the way. We also have a really disturbing image in Alexa's VSI recorded interview where the interviewer asked her if her father's body moved while he got behind her and touched her. And you can't see Claudia's hand movement, but you can see the interviewer saying, so did it happen like this? And for the record, I'm making a movement with my hand back and forth sort of horizontally. And Alexa was very clear, yes, that's what happened. So that's corroboration, too. So you have the sex abuse diagnosis. You have knowledge beyond her years. But most importantly, you have two sisters who are telling a very similar story, okay? The father comes in, likely after a long time of drinking, comes into their bed, lays behind them, touches them on their private parts. The mode that he operated in is corroborative. The fact that both of them alleged it is corroborative. And we know that this is admissible under Alexis H. and Ann W. So that really is the strong corroboration in this case. Following all of those lines, you asked to cite the inmate DM, okay? Yes. And in that case, KS is the stepdaughter, all right? And she's not a party or, you know, she didn't file a petition for adjudication. So in this case, is Claudia KS in your view? Claudia, yes. Claudia is similar to KS. KS, there was no petition brought on KS. The difference between KS in this case is that the court said, well, there has to be corroboration anyway. Because in KS, the other two children, they had never alleged any kind of abuse. And there was no sexual abuse finding in that case. KS said, I was abused by my stepfather. And based on that, the other two children were found abused and neglected, but not sexually abused. DM, I want to — My point was, and I don't mean to interrupt you, but my point was then, was the corroboration as to Claudia's statement, or do we need any corroboration? If we follow along what the court said in DM, what's the corroboration for Claudia's side of court statements? Well, there are three things, Judge. I can tell you what the corroboration is. Number one, we do not need corroboration. Number two, DM — Corroborated statements? No. DM does not stand for the fact that we need corroboration for DM statements. What it said was they need corroboration anyway. Because KS, her statement standing by itself, she didn't testify, was used to find abuse of the other two children. So without the confession by the stepfather, all you would have is an independent statement set out of court. So what the court said is, well, wait a minute, no. This is admissible. KS's VSI is admissible. But, of course, we still need corroboration. And this case is different because, okay, first of all, if we needed corroboration for Claudia, it would be Alexa. They corroborate each other. That's what the case law says. Number two, I mean, we had Claudia's sex abuse diagnosis. Number three, I think the medical records from St. Elizabeth when she was actually psychiatrically hospitalized certainly increased the reliability and the corroboration. These were trained psychiatrists who were dealing with Claudia, and she said over and over again when she was psychiatrically hospitalized, I want to kill myself. I can't believe this happened again. I can't believe my father did this to me. I can't believe that my life is being disrupted again. And the records say over and over again how angry and upset she is about what her father did to her. It's all over the place. And this is another point. If Claudia was fabricating this, if Claudia was fabricating something, she certainly went to great lengths to do it. I mean, this is kind of the point I'm making. If she fabricated it, why would she continue with this to be in a severely depressed mood after she went to St. Elizabeth? She had been removed from her father. If she wanted to be removed from her father so much that she made up a fabrication, why would she continue? She's got to be the greatest actor. She convinced these psychiatrists at St. Elizabeth that she had been sexually abused and that her depression and intense despair was caused by being sexually abused by her father. So that's where the reliability is. That's where the corroboration is. I would go to Justice Gordon about the standard of review and manifest weight of the evidence. When you put it all together, I can't see how it can be reversed on manifest weight of the evidence standard. The court heard all the testimony. We have two sisters alleging the same thing, the same mode of operation. Claudia, especially, has been severely damaged by the sexual abuse. There's one issue I wanted to address that counsel made about an unreliable aspect of Claudia's statement, which is that Claudia said to Venus Cole, a DCP worker, that this happened way in the past of her father, and then later she said it happened in the present. Actually, the truth is that Venus Cole never asked Claudia when it happened. She didn't, because the VSI is supposed to be a limited, exclusive thing. The record shows clearly, I never asked. Venus Cole was under the impression that what Claudia was saying happened a long time ago. When Claudia was asked specifically when it happened at Stroger with Dr. Loran, she said it happened that Friday before, when her father had been drinking. So this idea that Claudia changed her story about the time frame of when this happened, the record simply doesn't reflect that. And we know that the DCP worker asks extremely limited questions when they're asking about sex abuse, because the idea is that the VSI has to be the only interview. So in terms of DM, we know that Claudia's statement is admissible under 2-18. That's the narrow point that I wanted to make. But number two, as the court was asking about the Hargrove records and the St. Elizabeth records, Claudia's medical records were never objected to. And by the way, I addressed the issue in my brief that the business records exception cannot apply to anybody except the minor. We know Precious W. I cited Precious W in another case holding otherwise, that that provision affects even a parent. You can bring a parent's medical records in under that provision. You can bring a sibling's medical records. So that argument should be rejected in a legal sense. And certainly Claudia's medical records from St. Elizabeth I think are extremely important, because they're so detailed and they go on for so long about her depression and pain and her explanation of why. And not only that, she said, I didn't like being in foster care. When I was in foster care, my foster mother made me cook for our other kids. She was mean. So this idea that she was making up an allegation to get away from her father so she could go back into foster care, that's not supported by the record either. That's pure speculation. There is some evidence that Claudia had problems with her dad earlier when she was at Hargrove. But she had not known him for nine years. He had not been in the children's life for nine years until they were removed from their mother. And she's a teenager. She's going to have problems with her father. But her statements are clear. And we know from Walter B that the legislature has set up a system where you need corroboration, but this out-of-court statement of abuse is admissible. And citing the U.S. Supreme Court, there's an inherent reliability to that. Not enough. To protect the parents' due process rights, you need corroboration. So we know that the law should consider sex abuse allegations with a certain amount of reliability. It doesn't mean except is true in every case, obviously. There has to be support. Now, in this case, there is support all over the place. It's kind of overwhelming. When you have two sisters saying the same thing in the same way, it strains belief that one of them is copying the other. It's a conspiracy. It's a fabrication. I have a question regarding the trial court orders that were entered on July 10th with regards to the boys. The order that was entered indicates minors were previously removed from their mother's care, minor siblings disclosed their father sexually abused the siblings. And then it goes on to say minors resided with their father at the time their siblings were sexually abused by their father. All right. And then, so is that, because I thought there was no evidence with regards to the boys at all. Well, it would be just like DM. The boys never made an outcry of sex abuse. It would be just like DM, where KS testified about being sexually abused by the stepfather. The other two children who were found abused and neglected, and that was affirmed. That was based on, you know, the neglect of the siblings. So the idea is that if a parent is sexually abusing one of the siblings, it's unsafe to keep the children in the home. I would point out, Your Honor, this is not a permanent deprivation of parental rights. In fact, there's case law saying the father is not forced to admit sexual abuse. This family can theoretically be reunited at some point if proper services are in place. And that's an important point I want to make in terms of any kind of due process argument. So if there's any other questions, I would. Thank you. Thank you, Your Honor. If you please, the Court. I just want to address the question of why no petition was filed, apart from the fact that as DM states. Could you speak up just a little bit more? I'm sorry. I'd like to address the question about why, your question as to why no petition was filed for Claudia. And apart from the fact that DM states it's not necessary for her testimony to come in, my understanding of this is that no petition was filed because there was already a petition open for her. The children had been taken away from the mother at an earlier time until the father got back and he took the children. So before the father ever had the children in his custody, apparently the mother's boyfriend had sexually abused another daughter, Yolette. And all the children were taken away at that point in time. Because of Claudia's psychological problems, they wanted her case to be kept open so that they could keep track of her. So because a petition was already filed and the Court was already keeping track of her, there was no need to file another petition in that regard. The need would have come in if it was necessary for her to testify. But as DM says, there didn't need to be a petition for her in order to testify. And was that petition still pending at the time when Alexis' petition was being considered? Yes. Okay. Yes, it was. If there are no other questions, we would stand by the public guardian's arguments and ask this Court to affirm the adjudication and disposition orders in this case. Thank you. Thank you. Thank you, Your Honors. Just to address some of the issues that the guardian raised. The guardian raised that Claudia's testimony or allegations can be used to corroborate Alexis'. The guardian refers to Inri and W. That was a case in which six children were involved. Each of them were interviewed. And each child reported ongoing sexual abuse, which occurred over several years. The children had to participate. They either observed others being abused or they were forced to participate. So their allegations corroborated in a way that certainly isn't in our case. There is no allegation, there is no claim that either Claudia or Alexis witnessed the allegations or the alleged abuse. There is no allegations that the boys who were in the room, in fact in the same bed, had noticed or observed any of the abuse. How do you address the issue that's in the court order? That actually referred to the previous. The father wasn't involved in that court order. That referred to Yolette's father, who is not Mario L. Yolette is the stepfather. The court order is kind of specific in terms of siblings and father. It doesn't say stepfather, it doesn't say sibling, it says siblings. And it repeats quite often in the court order. Yes, and the case first came in, father Mario was not in Chicago when the case first came in. And the mother's paramour, and it appears it's Yolette's father, was found to have abused Yolette. And, I'm sorry, mother's paramour, I don't believe it was Yolette's father, I believe it was Mario, the children, and Joshua's father, was found to have abused Yolette. And that is how the case initially came in. Father, the appellant in this matter, after adjudication, and there was a finding in adjudication that father's whereabouts, my guy, were unknown. After adjudication, father then comes from actually out of the country and comes to seek custody. So that finding that you refer to has to do with a different father. The other case which the guardian referred to as in support of Claudia's allegations should be used to corroborate in the Alexis H. Again, the facts are significantly different. The children are, again, observed, the other children being abused, and that is sufficient. Also, there was a detective in that case who testified to the BSI that came into evidence. You don't have that level of specificity, you don't have that level of corroboration that you have in this case. The guardian makes a lot of the St. Elizabeth records. There was no testimony that the child being hospitalized was as a result of her being sexually abused. In fact, if you look, she had a history of being hospitalized prior to there being any allegations of sexual abuse. Thank you. Thank you. In the event that the parties weren't present when I made that statement at the beginning of opening of court, Justice Lankin, due to illness, couldn't be here today, but she is going to be listening to the tapes and will be participating in the court's decision as well. I want to thank counsels for a very well-briefed matter and well-argued as well. The court will take this matter under advisement and the court is adjourned. Thank you.